___ FILED    ___ ENTERED
___ LODGED   ___ RECEIVED

JUN 15 2009   RE

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY             DEPUTY



**09-CV-00815-CMP**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION

            Plaintiff,

   v.

ERIC LAM A/K/A ERIC CHUEN LAM,
MELANIE SUEN A/K/A MELANIE MA
LAN SUEN A/K/A MA LAN MELANIE
SUEN A/K/A/ MA LAN SUEN, GORDON
LAM, SUPER CONTINENTAL US LLC,
SUPER CONTINENTAL USA LLC, UMGE,
and DOES 1 THROUGH 50, inclusive,

            Defendants.

Civil Case No. **C 0 9 - 0 8 1 5** PSM

COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES

Plaintiff Microsoft Corporation ("Microsoft") brings this action against Defendants seeking injunctive relief and damages and alleges as follows:

## JURISDICTION AND VENUE

1.    This is an action for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with business relationship, fraudulent concealment, fraudulent misrepresentation, civil conspiracy, and violations of 18 U.S.C. § 1030, Rev. Code Wash. § 19.270.010 *et seq.*, and Rev. Code Wash. § 19.86.020. Microsoft seeks damages and injunctive relief to remedy Defendants' fraudulent conduct in perpetrating a massive "click fraud" scheme on the online advertising network operated by Microsoft and to benefit all legitimate advertisers by protecting the integrity of Microsoft's advertising network from the unfair, deceptive, and fraudulent actions of Defendants.

COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES - 1
K:\2000103\03194\20332_DAB\20332P249U

**ORIGINAL**

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

SEA 26872 SUMMONS ISSUED

1    2.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1332
2    and 18 U.S.C. § 1030, in that at least one cause of action arises under the laws of the United
3    States, there is diversity of citizenship among the parties, and the amount in controversy
4    exceeds $75,000. The Court also has jurisdiction over the state law claims under 28 U.S.C.
5    §§ 1338(b) and 1367(a), as well as under general principles of supplemental and pendent
6    jurisdiction, in that said claims are joined with a substantial and related claim under the laws
7    of the United States.

8    3.    This Court has personal jurisdiction over Defendants because they
9    purposefully availed themselves of the privilege of conducting activities in this forum or
10   purposefully directed their activities towards this forum, causing harm to Microsoft in this
11   forum; Microsoft's claims arise from Defendants' forum-related activities; Defendants
12   consented to jurisdiction in this forum; and the exercise of personal jurisdiction over
13   Defendants is reasonable.

14   4.    Venue in this District is proper under 28 U.S.C. §§ 1391(b), in that a
15   substantial part of the events or omissions giving rise to the claims plead herein occurred in
16   the Western District of Washington and/or a substantial part of the property that is the subject
17   of the action is situated in this District.

18                                    **THE PARTIES**

19   5.    Plaintiff Microsoft is a Washington corporation with its principle place of
20   business in Redmond, Washington.

21   6.    Defendant Eric Lam a/k/a/ Eric Chuen Lam ("Lam") is an individual allegedly
22   born in Guangzhou, China in 1976, and believed to be a current resident of Vancouver, BC,
23   Canada, or Guangzhou, China.

24   7.    Defendant Melanie Suen, a/k/a Melanie Ma Lan Suen a/k/a Ma Lan Melanie
25   Suen a/k/a Ma Lan Suen ("Suen") is an individual believed to be a current resident of
26

COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES - 2
K:\20001103\03194\20332_DAB\20332P249U

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Vancouver, BC, Canada. On information and belief, Suen is the mother of Lam and is a person working with Lam in the conduct at issue here.

8. Defendant Gordon Lam ("Gordon Lam") is an individual believed to be a current resident of Vancouver, BC, Canada. On information and belief, Gordon Lam is the brother of Lam and is a person working with Lam in the conduct at issue here.

9. Defendant Super Continental US LLC ("Super Continental US") is a Delaware limited liability company with a registered address of 501 Silverside Road, Suite 105, Wilmington, Delaware, 19809 and is believed to be owned and/or controlled by Defendants Lam and Suen and is used by Lam and Suen to register online advertising accounts with Microsoft. Defendant Super Continental USA LLC ("Super Continental USA") is a Delaware limited liability company with a registered address of 501 Silverside Road, Suite 105, Wilmington, Delaware, 19809 and is believed to be owned and/or controlled by Defendants Lam and Suen and is used by Lam and Suen to register online advertising accounts with Microsoft, (Super Continental US and Super Continental USA are collectively referred to as "Super Continental".) On information and belief, the individual Defendants Lam, Suen, and Gordon Lam so dominate and control both Super Continental US and Super Continental USA that they should all be treated as one and the same.

10. Defendant UMGE is a Delaware limited liability company with a registered address of 501 Silverside Road, Suite 105, Wilmington, Delaware, 19809 and is believed to be owned and/or controlled by Defendant Lam and is used by Lam to register online advertising accounts with Microsoft. On information and belief, the individual Defendants Lam, Suen, and Gordon Lam so dominate and control UMGE that they should be treated as one and the same.

11. Microsoft is unaware of the true names and capacities of Defendants sued herein as John Does 1-50, inclusive, and therefore sues these Defendants by such fictitious names. Microsoft will amend this complaint to allege their true names and capacities when

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE. (206) 623-7022

1  ascertained. Microsoft is informed and believes and therefore alleges that each of the

2  fictitiously named Defendants is responsible in some manner for the occurrences alleged here,

3  and that Microsoft's injuries as herein alleged were proximately caused by such Defendants.

4       12.     Each Defendant aided and abetted the actions of the other Defendants, in that

5  each Defendant had knowledge of those actions and, in whole or in part, provided assistance

6  and benefited from those actions. Each Defendant was the agent of each of the remaining

7  Defendants, and was acting within the course and scope of such agency and with the

8  permission and consent of each other Defendant with respect to the conduct alleged here.

9  **THE PRESENT CONTROVERSY**

10       13.     As part of its business, Microsoft delivers online advertising using its

11  Microsoft adCenter ("adCenter") platform. adCenter ads appear on the network of Internet

12  advertising channels operated by Microsoft and Microsoft's network of participating Web

13  sites and other distribution outlets, including Microsoft Advertising and the Microsoft Media

14  Network (collectively, the "Microsoft Network"). This action seeks to stop, and to recover

15  damages caused by, illegal conduct perpetrated by Defendants that has sought to disrupt and

16  defraud the Microsoft Network and its participating advertisers. By engaging in a widespread

17  scheme that generated invalid clicks on links to online ads that were displayed in response to

18  search requests on Microsoft's network, Defendants disrupted the advertising campaigns of

19  their competitors, obtained increased user traffic for their own ads at a much lower cost than

20  they could have otherwise, and caused substantial damages to Microsoft, which has lost

21  revenues and expended substantial money and resources to remedy the effects of Defendants'

22  conduct. Accordingly, Microsoft brings this action to protect the integrity of online

23  advertising for the benefit of all legitimate advertisers and to recover the damages caused by

24  Defendants' improper conduct.

25

26

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## A. Microsoft AdCenter

14. Through adCenter, Microsoft provides advertisers with tools to help manage their advertising campaigns on Microsoft's search engine, known as Live Search. Advertisers who use adCenter bid on keywords or keyword phrases relevant to their target market. For example, an airline might bid on keywords such as "airline tickets," "cheap flights," and "last-minute flights." When a user types one of these keywords or keyword phrases, or a query that is relevant to the bidded keyword, into Live Search, results, known as "sponsored sites" for that advertiser appear on the top and right side of the page, next to unpaid, organic search results. When users click on these sponsored sites, they are directed to an advertiser's Web site.

15. In large part, keyword bidding by advertisers functions much like an auction. Advertisers bid the highest amount they are willing to pay for a particular keyword, and the "winner" will pay one penny more than the next highest bidder. Hence, to simplify, if advertiser #1 bid $30 for the keyword phrase "airline tickets" and the next highest bidder—advertiser #2—bid $25 for that same keyword phrase, advertiser #1 would pay $25.01 for the keyword phrase "airline tickets." This means that advertiser #1 would pay $25.01 each time its sponsored site was offered up to an Internet user who enters the keyword phrase "airline tickets" into Live Search, and the Internet user clicks on advertiser #1's sponsored site. Additionally, the auction involves a variety of non-price-related performance factors, including the ad's Click-Through-Rate ("CTR"), which is based on the number of times the sponsored site was served (also referred to as the number of "impressions") relative to the number of clicks on the sponsored site.

16. The placement of sponsored sites is critical for advertisers because the higher the ranking, and thus the positioning on the results page, of a sponsored site, the higher volume and higher quality the user traffic that clicks on the sponsored site, and the more likely a conversion will occur—*that is, that a user will click on the sponsored site and take a*

COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES - 5
K:\2000103\03194\20332_DAB\20332P249U

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE. (206) 623-7580
FACSIMILE (206) 623-7022

1 desired action when directed to an ad, such as purchasing a product or registering for a

2 service.

3      17.    adCenter uses a "Pay-Per-Click" ("PPC') payment model employed by most

4 major search engines. Under this model, an advertiser will allot a budget for a particular

5 advertising campaign—a set of related keywords—for a set period of time. While the

6 advertising campaign is active, the advertiser's sponsored site will appear in the Live Search

7 results when a user types in a query relevant to these keywords. Each time a user clicks on an

8 adCenter sponsored site, the advertiser pays for that click and the charge for that sponsored

9 site (determined on the auction basis described above) is deducted from the advertiser's

10 budget. Once the budget for the time period has been exhausted, the sponsored site will no

11 longer appear for searches of those keywords or relevant queries until a new budget cycle

12 begins. The price for each user click on a sponsored site is commonly known as Cost-Per-

13 Click ("CPC"). CPC can range from five cents to hundreds of dollars, depending on the

14 competition among advertisers for particular keywords.

15 **B.    Click Fraud**

16      18.    The PPC advertising model, which is used by all major search engines, can be

17 subject to "pay-per-click fraud." Pay-per-click fraud is an industry term used to describe a

18 type of Internet crime that occurs in PPC online advertising when a person, automated script,

19 or computer program imitates a legitimate user of a Web browser by clicking on a sponsored

20 site for the purpose of generating a CPC without having actual interest in the target of the

21 sponsored site's link. Pay-per-click fraud is a subset of "invalid clicks," a broader term that

22 encompasses both proactive clicks generated with a fraudulent or deceptive purpose as well as

23 inadvertent or otherwise improper clicks.

24      19.    One type of pay-per-click fraud is "competitor click fraud." This type of click

25 fraud occurs when a perpetrator repeatedly clicks on the sponsored site of its competitor in an

26 effort to exhaust or deplete the competitor's advertising budget and lower the placement of

COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES - 6
K:\2000103\03194\20332_DAB\20332P249U

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  the competitor's sponsored site, while simultaneously boosting the placement of the click

2  fraud perpetrator's own sponsored sites for the same keywords. Additionally, by exhausting

3  the ad budget or reducing the performance of sponsored sites for higher-bidding competitors,

4  competitor click fraud effectively lowers the cost of the targeted keyword when displayed to

5  legitimate users, meaning that the click fraud perpetrator's sponsored site will be displayed

6  with a higher ranking and at a lower price while raising the costs and lessening the value of

7  the competitors' advertising spend. For example, an advertiser in a particular industry such as

8  auto insurance that has a sponsored site appearing low on the results list could generate

9  repeated clicks on the higher-ranked sponsored sites of its competitors to the point that the

10  competitors' advertising budgets were exhausted or the performance of their sponsored sites

11  was dramatically lowered. This would cause the higher-ranking sponsored sites to drop off

12  the results page or decrease in the rankings, and the perpetrator's lower-ranking sponsored

13  site to rise to a higher position in the sponsored site list. This improved sponsored site

14  positioning would lead to increased and better quality traffic (and presumably greater

15  revenue) for the click fraud perpetrator—without the perpetrator paying a higher bid price for

16  keywords.

17        20.      For simplification, the generic term "click fraud" is used here to refer to

18  competitor click fraud occurring in a PPC advertising model. This type of click fraud can be

19  accomplished through a variety of methods, including the use of what are commonly referred

20  to as "click farms," where workers are hired to repeatedly click on sponsored sites, as well as

21  through automated tools that use robot technology, malicious code, spiders, and networks of

22  computers known as "botnets" to repeatedly click on sponsored sites. Microsoft devotes

23  significant resources and efforts to address click fraud on its network, both proactively and

24  reactively, and has dedicated traffic quality teams focused on combating click fraud to protect

25  advertisers on the Microsoft Network.

26

COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES - 7
K:\20001103\03194\20332_DAB\20332P249U

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**C.    Auto Insurance And World Of Warcraft ("WoW") Verticals**

21.      adCenter sponsored sites can be grouped into different "verticals," which are made up of the set of sponsored sites relating to a particular product or industry.  For example, sponsored sites related to auto insurance—such as sponsored sites for auto insurance companies and auto insurance lead companies (companies that essentially act as a broker by identifying customers interested in purchasing insurance and selling that "lead" to companies selling auto insurance)—constitute the auto insurance vertical on adCenter.

22.      World of Warcraft ("WoW) is another vertical on adCenter.  WoW is a subscription service for an online game in the category known as "massively multiplayer online role-playing games" ("MMORPG").  On information and belief, the game is played by over eleven-and-a-half million subscribers worldwide.  Internet users interested in playing and learning more about WoW use WoW-related keywords to find relevant Web sites.  For example, users may type various WoW-related keywords to find information about strategies for playing WoW or about the "gold" currency used in WoW ("WoW gold").  Like advertisers in other industries, advertisers of WoW-related items bid on relevant keywords and place sponsored sites that appear on Live Search when Internet users search for terms relevant to these keywords.  Because of the time and effort required to earn WoW gold as well as to gather weapons within the game, a real world economy has developed for these items.  Companies selling WoW gold—including companies believed to be owned by Defendants—advertise the sale of WoW gold for real currency by bidding on keywords using adCenter and the Microsoft Network (as well as other online advertising networks).

**D.    Defendants' Misconduct**

23.      This action arises out of Defendants' breach of the Microsoft adCenter Terms and Conditions ("Terms and Conditions") and general abuse of the adCenter online service.

24.      Defendants have registered at least seven accounts on adCenter using the names, Super Continental US LLC (USA) and UMGE.  Each of the seven times Defendants

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

registered these accounts, Defendants consented to the adCenter Terms and Conditions. Specifically, three adCenter accounts for which Lam is the credit card holder were created on July 14, 2007, November 19, 2007, and December 10, 2007, with Lam or one of the other Defendants accepting and agreeing to the Terms and Conditions of each account. In addition, four adCenter accounts for which Suen is the credit card holder were created on August 16, 2007, August 29, 2007, March 29, 2008, and January 13, 2009, with Suen or one of the other Defendants accepting and agreeing to the Terms and Conditions of each account.

25. Included in the Terms and Conditions is the representation and warranty: "You will not, and will not authorize any third party to, use any automated means, including, without limitation, agents, robots, scripts or spiders . . . to interfere with the proper working of Microsoft or the Microsoft Advertising Network and will not generate automated or fraudulent impressions or clicks of advertisements on the Microsoft Advertising Network." *See* Appendix A, Microsoft adCenter Terms and Conditions (November 26, 2007 update), at ¶ 5.c; Appendix B, Microsoft adCenter Terms and Conditions (July 28, 2006 update), at ¶ 5.b. Defendants repeatedly violated both the plain terms and spirit of the Terms and Conditions by engaging in a scheme to generate automated clicks on competitors' sponsored sites with malicious and fraudulent intent.

26. On March 24, 2008, Microsoft received an unusually high number of complaints of suspicious activity from advertisers in the auto insurance industry. The complaints concerned a dramatic spike in "exact" match-type keywords frequently bid on by auto insurance advertisers; namely, "auto insurance," "car insurance," "cheap car insurance," "auto insurance quote," and "auto insurance quotes." Such a spike for exact match-type keywords is extremely unusual—it is as if one hundred people in a room were asked to type the first three words that came to mind, and all one hundred typed the same three words at the same time, with no communication and no visual cues among them. Microsoft investigators confirmed that a large number of exact match-type keywords were being searched, and,

COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES - 9
K:\20001103\03194\20332_DAB\20332P249U

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

within a short period of time, the top sponsored site results were being clicked, which indicated that automated or "click farm"-generated click fraud was occurring on the Microsoft Network. Over the same period of time, Microsoft investigators discerned similar traffic spikes for exact match-type keywords in the WoW vertical.

27.    Microsoft investigators initially determined that several hundreds of thousands of the Internet Protocol ("IP") addresses identified as responsible for the searches and clicks were tracing back to computer networks known as "proxy server networks" and "dedicated network hosting providers," rather than individual computers connected to the Internet. Further investigation by Microsoft confirmed that these IP addresses were not the true source of the suspicious traffic but instead were used to disguise the identities of the perpetrators and to manipulate the network traffic so that it would appear to be generated by human, rather than automated, activity.

28.    On April 24, 2008, a similar attack of suspicious traffic began originating from a new range of IP addresses and impacted both the auto insurance and WoW verticals on the Microsoft Network. When Microsoft took steps to mitigate these automated attacks, the perpetrators followed by implementing countermeasures to Microsoft's actions. A cycle of events ensued whereby the Defendants would update their attack methods to bypass the fixes implemented by Microsoft, and Microsoft would take additional steps to combat the new click fraud attacks.

29.    In June and July 2008, new, similar attacks of suspicious traffic began originating from different ranges of IP addresses and impacted both the auto insurance and WoW verticals on the Microsoft Network.

30.    In the first two weeks of December 2008, a new wave of click fraud, directed at an "exact match"—"cheap auto insurance"—impacted one specific auto insurance advertiser. During this time period, exact word click fraud impacting the WoW market

COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES - 10
K:\2000103\03194\20332_DAB\20332P249U

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  originated from the same IP addresses as the click fraud impacting the auto insurance

2  advertisers.

3       31.    Like in the first attack, proxy server networks and dedicated network hosting

4  providers were used to conceal the origin of the fraudulent clicks in each of these subsequent

5  attacks.

6       32.    As these click fraud attacks impacted the Microsoft Network, Microsoft took

7  steps to rapidly counter the click fraud and to credit advertisers who had been charged for

8  fraudulent clicks.

9       33.    Over several months, Microsoft gathered substantial evidence demonstrating

10  that Defendants are the perpetrators of the auto insurance and WoW-related click fraud on the

11  Microsoft Network.

12       •    **Evidence Linking The WoW Click Fraud To The Auto Insurance Vertical**

13  **Attacks.** The click fraud affecting both the WoW and auto insurance verticals on adCenter

14  originated from identical IP address ranges, occurred during the same timeframe, and,

15  initially, utilized identical Web browser user agent strings (the text field in an HTTP request

16  that contains the name and version of the Web browser). (Had the traffic been legitimate,

17  Microsoft would have expected to see more than one hundred different Web browser user

18  agent strings from the IP addresses at issue, not one).

19       •    **Lam's Unique Connection To Both Verticals.** The click fraud at issue

20  targeted sponsored sites for two ordinarily unrelated markets: auto insurance and WoW. Lam

21  is uniquely involved in—and positioned to profit from click fraud in—both markets. Indeed,

22  Super Continental US holds itself out as responsible for the sales and marketing of

23  WoWMine.com, a Web site related to WoW with a domain name that is registered to Lam.

24  At the same time, the Super Continental US LLC (USA) account on adCenter also contains

25  campaigns related to the auto insurance vertical.

26

COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES - 11

K:\2000103\03194\20332_DAB\20332P249U

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1     •   **Lam's AdCenter Accounts With Suen And Gordon Lam.** Suspecting that

2 Lam was uniquely connected to both the WoW and auto insurance verticals, Microsoft

3 identified all of the adCenter accounts that were linked to Lam to determine how these

4 accounts were impacted by the attacks. Microsoft identified at least seven adCenter accounts

5 tied to Lam and the other Defendants, in the names of at least two purported companies,

6 Super Continental US LLC (USA) and UMGE. The credit card holder for each of the

7 accounts is Lam or Suen; all seven of the accounts were registered to the same email address;

8 the same name ("Vincent Chu" or "Vicent Chu") is the name used to register five of the seven

9 accounts; and six of the seven accounts were registered to the same physical address in

10 Delaware, where Defendants' companies Super Continental and UMGE are registered. The

11 domain names UMGE.com, UMGE.org, and UMGE.net all are registered to Eric Lam at the

12 same Delaware address. In addition, Super Continental US appears to be affiliated with a

13 Hong Kong entity Super Continental Ltd. (Hong Kong, S.A.R.) and a Canadian entity, Super

14 Continental Development Ltd. (Canada), of which Suen is the president and sole registered

15 director.

16     •   **Defendants AdCenter Accounts Benefited From The Click Fraud Attacks.**

17 During certain periods of high click fraud, the sponsored sites of Defendants' companies

18 (Super Continental and UMGE) experienced only a few isolated clicks from the IP addresses

19 generating the click fraud (most likely tests), whereas sponsored sites placed by Defendants'

20 competitors were hit with thousands of clicks from the IP addresses generating the click fraud.

21 This complex and nuanced attack against the Microsoft Network demonstrated a detailed

22 understanding of how the ad platform operates. The result was that while competitors'

23 advertising budgets were exhausted or sponsored site performance was decreased as a result

24 of the click fraud, Defendants' advertising budgets were not impacted, causing Lam's

25 sponsored sites to assume higher rankings and increased traffic, leading to increased revenue

26 for Lam and the other Defendants.

COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES - 12
K:\2000103\03194\20332_DAB\20332P249U

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    • **Lam's Other Web Sites Connect To The Click Fraud Attacks.** Microsoft

2    investigators confirmed Lam's involvement in the click fraud by connecting the fraudulent

3    clicks to computers or servers registered to and/or operated by Eric Lam from Vancouver,

4    British Columbia. Lam uses these servers to host Web sites on which he openly sells WoW

5    gold.

6        34.    Through their click fraud scheme, Defendants impacted the performance of

7    competitors' sponsored sites related to auto insurance and WoW, so that these competitor

8    sponsored sites would be displaced in the sponsored site results, allowing Defendants'

9    sponsored sites to achieve higher ranking, and therefore higher traffic (and resulting revenues)

10   at a relatively low cost to Defendants. On information and belief, Defendants profited

11   through this scheme because, in the WoW vertical, the higher traffic meant that more users

12   clicked on Defendants' sponsored sites and were directed to sites where they purchased WoW

13   gold from companies controlled by Defendants. In the auto insurance vertical, the higher

14   traffic meant that more users clicked on Defendants' sponsored sites and were directed to

15   Web pages where they were asked to submit information to receive insurance quotes.

16   Defendants then would sell that consumer information at a premium to a third party auto

17   insurance lead company, who in turn would sell the information to legitimate auto insurance

18   companies, which would provide the quotes. By defrauding Microsoft in this manner,

19   Defendants gained substantial revenue that would not be generated but for this fraudulent and

20   malicious activity and harmed both Microsoft and Defendants' competitors, who are

21   legitimate advertisers on the Microsoft Network.

22       35.    As this click fraud impacted the Microsoft Network, Microsoft took steps to

23   ensure that its advertisers were not adversely affected, by issuing advertising credits to all

24   advertisers who were impacted by the fraudulent activity. Overall, Microsoft credited nearly

25   $1.5 million to auto insurance and WoW advertisers in direct response to Defendants' click

26   fraud. Apparently to divert suspicion from his own activities as the source of the fraudulent

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

1  activity, Lam himself complained to Microsoft about the incidence of click fraud on the

2  Microsoft Network, and, he too was issued a small credit by Microsoft before Microsoft knew

3  Lam himself was behind the click fraud scheme. This maneuver initially diverted attention

4  from Lam as being the source of the fraudulent activity.

5      36.     As a direct result of Defendants' conduct, Microsoft has lost revenue, incurred

6  expenses, and suffered damage to its business, reputation, and goodwill. In particular,

7  Microsoft has been harmed in at least the following respects. First, the fraudulent scheme of

8  Defendants has the inevitable effect of lowering the confidence of legitimate advertisers in the

9  online advertising industry. In fact, at least one legitimate auto insurance company

10  temporarily suspended its advertising campaigns on the Microsoft Network that included

11  keywords impacted by Defendants' click fraud scheme. Second, the displacement of

12  legitimate advertisers from their positions in the sponsored sites caused the prices for

13  keywords relating to auto insurance and WoW to go down and some advertisers to spend less,

14  effectively undervaluing the entire market for sponsored sites in those verticals, and causing

15  Microsoft to suffer additional lost profits. Third, Microsoft has expended substantial resources

16  (including considerable developer time and customer support resources) in order to

17  investigate and address the fraudulent activities of Defendants. In all, Microsoft estimates

18  that it suffered at least $750,000 in damages as a direct result of Defendants' click fraud

19  scheme.

20      37.     Unless enjoined, Defendants will continue their click fraud attacks on the auto

21  insurance and WoW ad markets. Microsoft has been, and continues to be, irreparably

22  damaged by Defendants' conduct, and has no adequate remedy at law, in that it may be

23  difficult to ascertain the amount of compensation that could afford Microsoft adequate relief

24  for such continuing acts.

25

26

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## COUNT I—BREACH OF CONTRACT
### (Against All Defendants)

38.     Microsoft incorporates and realleges each and every allegation contained in paragraphs 1-37 of this Complaint.

39.     Defendants have registered accounts for at least two purported companies, Super Continental and UMGE, on adCenter.  Upon opening those accounts, Defendants consented to the standard Terms and Conditions for participation in the Microsoft Network.

40.     Under these Terms and Conditions, Defendants—both the registered account owners, Super Continental and UMGE, and, under principles of alter ego, the individual Defendants as well—were contractually prohibited from generating automated or fraudulent impressions or clicks on sponsored sites on the Microsoft Network.  In addition, Defendants were prohibited from authorizing any third party to engage in such activity.

41.     Microsoft performed all conditions, covenants, and promises required to be performed by Microsoft in accordance with the Terms and Conditions, except those that Microsoft was prevented or legally excused from performing and those as to which its performance was waived.

42.     Defendants breached the Terms and Conditions by generating artificial and/or fraudulent clicks or impressions on competitors' sponsored sites appearing on the Live Search results pages.

43.     These artificial and/or fraudulent clicks exhausted the advertising budgets of Defendants' competitors, causing the rank of Defendants' sponsored sites to rise on Live Search results pages.  In conjunction or alternatively, artificial and/or fraudulent impressions on the sponsored sites of Defendants' competitors impacted the performance of the sponsored sites of Defendants' competitors, causing the rank of Defendants' sponsored sites to rise on Live Search results pages.  By virtue of manipulating the results page rankings for their benefit, Defendants received significant revenue to which they were not entitled.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE: (206) 623-7022

44.     Microsoft has been injured by Defendants' breaches of the applicable Terms and Conditions in an amount to be proven at trial.

## COUNT II—BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against All Defendants)

45.     Microsoft incorporates and realleges each and every allegation contained in paragraphs 1-44 of this Complaint.

46.     The Terms and Conditions contained an implied covenant of good faith and fair dealing, providing that neither party would act to deprive the other of the benefits of the agreement between them.

47.     A principal and reasonable expectation of Microsoft in entering into the Terms and Conditions with advertisers such as Defendants was that advertisers would not attempt to generate fraudulent clicks or impressions in order to increase their own revenues or decrease the revenues of other advertisers or of Microsoft.

48.     The implied covenant obligated Defendants to refrain from generating fraudulent clicks and impressions so as to increase their revenues as the expense of other advertisers and of Microsoft. In doing so, Defendants breached the implied covenant of good faith and fair dealing.

49.     Defendants' conduct has caused damages to Microsoft in an amount to be proven at trial.

## COUNT III—TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS
### (Against All Defendants)

50.     Microsoft incorporates and realleges each and every allegation contained in paragraphs 1-49 of this Complaint.

51.     Microsoft had valid contractual relationships with legitimate advertisers participating in adCenter, specifically with those advertising in the WoW and auto insurance markets.

COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES - 16
K:\20001103\03194\20332_DAB\20332P249U

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

52. Defendants had knowledge of the existence of such contractual relationships between Microsoft and its legitimate advertisers.

53. Defendants intended to, and did, disrupt the contractual relationships between Microsoft and its legitimate advertisers, depriving Microsoft of the complete benefits of those contractual relationships.

54. Defendants' disruption of Microsoft's contractual relationships was for an improper purpose and done by improper means.

55. As a direct and proximate cause of Defendants' tortious interference with those contractual relationships, Microsoft has been damaged in an amount to be proven at trial.

56. Defendants acted fraudulently and in knowing and conscious disregard of Microsoft's rights, intending to cause harm to Microsoft and its legitimate advertisers and to benefit themselves at others' expense.

## COUNT IV—FRAUDULENT INDUCEMENT
### (Against All Defendants)

57. Microsoft incorporates and realleges each and every allegation contained in paragraphs 1-56 of this Complaint.

58. In entering into the Terms and Conditions, Defendants—both the registered account owners, Super Continental and UMGE and, under principles of alter ego, the individual Defendants as well—promised not to generate invalid clicks or to authorize or encourage others to engage in such conduct. Defendants made these promises without any intent of performing them. Indeed, Defendants intended to violate these promises from the start of their contractual relationship with Microsoft.

59. Defendants' false promises to comply with the adCenter Terms and Conditions were made with scienter, as Defendants made them to induce Microsoft to enter into the Terms and Conditions with Defendants and allow them to maintain accounts on the Microsoft Network.

COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES - 17
K:\20001103\03194\20332_DAB\20332P249U

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

60.     Microsoft relied on Defendants' false promises, as Microsoft would never have allowed Defendants to maintain accounts as advertisers on the Microsoft Network had it known their true intentions.

61.     As a direct result of Defendants' false and fraudulent promises, Microsoft has been damaged in an amount to be proven at trial.

## COUNT V—FRAUDULENT MISREPRESENTATION
### (Against All Defendants)

62.     Microsoft incorporates and realleges each and every allegation contained in paragraphs 1-61 of this Complaint.

63.     Defendants knew that Microsoft adCenter utilizes the PPC model both because it is common knowledge and because Microsoft's payment structure is described in the Terms and Conditions, to which Defendants consented.  Accordingly, Defendants knew that when a user clicks on an advertiser's sponsored site, Microsoft recognizes that click as an expression of the user's legitimate interest in accessing the advertised site, and thus charges the advertiser for each click.

64.     By generating artificial or fraudulent impressions on sponsored sites, Defendants represented to Microsoft that each of those clicks was legitimate and that the purported individual clicking desired to access the site being advertised.

65.     Defendants, but not Microsoft, knew that such representations were false. Defendants' clicks were not legitimate and the intent of the click was not to access the advertised site for a legitimate purpose.

66.     Defendants' misrepresentations to Microsoft through the generation of fraudulent or automated clicks were intentional and made with scienter in an effort to induce Microsoft to charge advertisers for clicks on their sponsored sites and to input those clicks into the adCenter ad placement algorithm.

COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES - 18

K:\20001103\03194\20332_DAB\20332P249U

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

67.     Microsoft did rely on Defendants' misrepresentations as to the legitimacy of the clicks that Defendants generated by charging advertisers for those clicks and inputting those clicks into the adCenter ad placement algorithm.

68.     Microsoft had a right to rely on Defendants' misrepresentations because Microsoft takes reasonable measures to protect the integrity of the Microsoft Network and adCenter system and thus has a legitimate expectation that activity on the Microsoft Network would take place for a legitimate purpose.

69.     As a direct result of Defendants' fraudulent conduct, Microsoft has been damaged in an amount to be proven at trial.

### COUNT VI—COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030)
(Against All Defendants)

70.     Microsoft incorporates and realleges each and every allegation contained in paragraphs 1-69 of this Complaint.

71.     In engaging in the conduct described above, including but not limited to using a botnet or other automated program in order to send commands or information that generated invalid clicks and impressions with respect to the sponsored sites of competitors, Defendants knowingly caused the transmission of a command or information and, as a result, intentionally caused damage to a protected computer, within the scope of 18 U.S.C. § 1030(a)(5)(A). Defendants also knowingly, and with the intent to defraud, exceeded their authorized access to the adCenter system by generating invalid clicks and impressions and by means of this conduct furthered their intended fraud and thereby obtained substantial revenue that would not have been generated but for their fraudulent scheme in violation of 18 U.S.C. § 1030(a)(4).

72.     In particular, by generating invalid clicks and impressions, Defendants caused an impairment to the integrity and availability of the data in adCenter.

73.     Defendants caused Microsoft damages within a one year period in excess of $5,000, in that adCenter service was interrupted and the integrity of the data in adCenter was

COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES - 19
K:\20001103\03194\20332_DAB\20332P249U

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  adversely affected, distorting the rankings of advertisers in the WoW and auto insurance

2  markets, depriving Microsoft of revenues from legitimate advertisers, and causing Microsoft

3  to expend substantial resources to investigate, police, and address the fraudulent activities of

4  Defendants.

### COUNT VII—WASHINGTON COMPUTER SPYWARE ACT
(Against All Defendants)

74.     Microsoft incorporates and realleges each and every allegation contained in
paragraphs 1-73 of this Complaint.

75.     To generate artificial and/or fraudulent clicks on sponsored sites, Defendants
transmitted or procured the transmission of software and/or executed a series of instructions
onto Microsoft's computers, servers, and other Microsoft resources comprising the Microsoft
Network, knowing that the software and/or series of instructions would use these computers,
servers, and other Microsoft resources comprising the Microsoft Network as part of an
activity performed by a group of computers, in violation of Rev. Code Wash. § 19.270.020(8).

76.     The purpose of Defendants' activity was to cause damage to Defendants'
competitors, to Microsoft, and to the Microsoft Network.

77.     Microsoft was damaged as a direct result of Defendants' conduct because the
adCenter service was interrupted and the integrity of the Microsoft Network was impaired and
Microsoft has expended substantial resources to investigate, police, and address the
fraudulent activities of Defendants.

### COUNT VIII—WASHINGTON CONSUMER PROTECTION ACT
(Against All Defendants)

78.     Microsoft incorporates and realleges each and every allegation contained in
paragraphs 1-77 of this Complaint.

79.     By engaging in the conduct set out above, Defendants have engaged in unfair
and deceptive acts and practices in trade or commerce pursuant to Rev. Code Wash.

COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES - 20
K:\2000103\03194\20332_DAB\20332P249U

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

19.86.020, in that they generated invalid clicks on the sponsored sites of legitimate advertisers in the WoW and auto insurance markets.

80.     This unfair and deceptive conduct has impacted the general public in that, as detailed above, it has distorted the online advertising market with respect to auto insurance and WoW, causing harm to legitimate advertisers and to Microsoft.

81.     Microsoft has suffered injury in its business as a result of the lost revenues and other damages detailed above, all of which were directly caused by the unfair and deceptive acts of Defendants.

## COUNT IX—CIVIL CONSPIRACY
### (Against All Defendants)

82.     Microsoft incorporates and realleges each and every allegation contained in paragraphs 1-81 of this Complaint.

83.     On information and belief, Defendants had an explicit agreement, and operated a common plan, to defraud their competitors and Microsoft out of money by carrying out a click fraud scheme on the Microsoft Network, as alleged above.

84.     Defendants took overt steps and wrongful acts toward this goal by, among other actions, registering accounts on adCenter for Super Continental and UMGE, bidding on keywords related to the auto insurance industry and WoW, generating artificial and/or fraudulent clicks on competitors sponsored sites, logging a formal complaint with Microsoft regarding click fraud on the Microsoft Network, and collecting a credit from Microsoft.

85.     As a direct result of Defendants' fraudulent conduct, Microsoft has been damaged in an amount to be proven at trial.

## COUNT X—UNJUST ENRICHMENT
### (Against Defendants Lam, Gordon Lam, and Suen And Does 1-50)

86.     Microsoft incorporates and realleges each and every allegation contained in paragraphs 1-85 of this Complaint.

COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES - 21
K:\2000103\03194\20332_DAB\20332P249U

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

87.     With respect to those Defendants against whom Microsoft may not have enforceable contract rights, Microsoft conferred a benefit on Defendants, in that Defendants were allowed to advertise on the network and took advantage of that opportunity to engage in improper and fraudulent conduct, thereby generating for themselves substantial additional revenues above what they could have obtained legitimately advertising through adCenter. In particular, Defendants benefited from their improper conduct by obtaining higher positioning for their sponsored sites without bidding higher for keywords than they otherwise would have, allowing Defendants to obtain valuable customer leads through their sponsored sites that they have sold to their benefit. Microsoft is informed and believes that the total benefit to Defendants from such conduct exceeded $250,000.

88.     Defendants therefore benefited improperly and have been unjustly enriched at the expense of Microsoft and legitimate advertisers, and inequity would result if Defendants were allowed to retain the benefit they have obtained.

## PRAYER FOR RELIEF

WHEREFORE, Microsoft prays for judgment against Defendants as follows:

89.     For preliminary and permanent injunctive relief enjoining Defendants from engaging in any conduct resulting in improper or invalid clicks on any sponsored sites on the Microsoft Network;

90.     For an award of compensatory damages in an amount to be proven at trial but in excess of $750,000 arising from Defendants' breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with contact, fraudulent concealment, fraudulent misrepresentation, and civil conspiracy, as well as violation of federal and state statutes;

91.     For an award of statutory damages or treble damages in an amount to be proven at trial;

COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES - 22
K:\2000103\03194\20332_DAB\20332P249U

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE (206) 623-7022

1    92.    For an accounting, disgorgement, and restitution by Defendants to Microsoft of

2  all amounts paid to Defendants through their accounts with adCenter or otherwise received by

3  Defendants as a result of their fraudulent, unfair, and improper conduct;

4    93.    For an award of Microsoft's attorneys' fees;

5    94.    For an award of Microsoft's costs of suit;

6    95.    For an award of prejudgment interest to the extent allowed by law; and

7    96.    For such other and additional relief as the Court deems just and proper.

8

9  DATED this 15th day of June, 2009.

10

11                              K&L GATES LLP

12                              By _____

13                              David A. Bateman, WSBA # 14262
                                925 Fourth Ave., Suite 2900
14                              Seattle, Washington 98104
                                Tele: (206) 623-7580
15                              Fax: (206) 623-7022
                                Email: david.bateman@klgates.com
16

17                              COVINGTON & BURLING LLP
18                              Simon J. Frankel, *pro hac vice pending*
                                1 Front St, 35th Floor
19                              San Francisco, CA 94123
                                Tele: (415) 591-7052
20                              Fax:  (415) 955-6552
                                Email: sfrankel@cov.com
21
                                Attorneys for Plaintiff
22                              MICROSOFT CORPORATION

23

24

25

26

COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES - 23

K:\2000103\03194\20332_DAB\20332P249U

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

# APPENDIX A

1. **INTRODUCTION.** This is a contract between you ("**Advertiser**" or "**You**") and Microsoft Online, L.P. (located at One Microsoft Way, Redmond, WA 98052-6399) ("**Microsoft**"). This contract applies to Your participation in the Microsoft adCenter online advertising program (the "**adCenter Program**"). No other terms of any sort appearing in any other communications from you to Microsoft in connection with an order for adCenter Program services alter or supplement this agreement. You represent and warrant that You are authorized to enter into this agreement and act on behalf of any third party for which You facilitate the adCenter Program. Microsoft may change this agreement at any time upon notice to You in accordance with the provisions of Section 8. Your continued participation in the adCenter Program after any such notice will signify Your acceptance of such change.

2. **MICROSOFT ADCENTER.** Subject to Your compliance with this Agreement, and such other rules and procedures as Microsoft may publish from time to time, You may access the adCenter Program through the adCenter Web site, currently located at http://adcenter.microsoft.com and certain related Web sites (collectively, the "**adCenter Site**"). You may access the adCenter Site solely to manage Your adCenter Program account, including to submit bids for the ability to display advertisements ("**Advertisements**") in response to certain keywords or other matching criteria ("**Keywords**") on the network of advertising channels operated by Microsoft and Microsoft's network of participating websites and other distribution outlets (collectively, the "**Microsoft Advertising Network**"). You will protect any passwords or other credentials associated with Your account(s), and take full responsibility for any use of the account(s) under Your password.

3. **CONTENT; PROGRAM CODE OF CONDUCT.** Advertisements may include, at Microsoft's discretion, text, graphics, a listing title, or a listing description. You will provide Microsoft with all text, logos, images, and URLs ("**Content**") for the Advertisements. The Content, the Advertisements, and any Web site to which such Advertisements link an end user will comply with the published requirements for the adCenter Program (currently available at http://adcenter.microsoft.com) including its trademark policies, editorial guidelines and creative specifications. You hereby grant Microsoft a nonexclusive, royalty-free, worldwide right and license to reproduce, publicly perform, display and distribute, resize or edit the Content solely for the purpose of providing services to You in connection with this agreement. Your failure to meet applicable time requirements or specifications in connection with the delivery of Content may delay or prevent placement of the Content on the Microsoft Advertising Network, or cause its removal from the Microsoft Advertising Network. Microsoft may, in its sole discretion, label any Advertisement as a "sponsored site," "advertisement" or similar designation for clarification purposes. You will not implement and/or use technology which prohibits users from using the "Back" button on such user's browser to return to the prior site or any Microsoft site.

4. **PAYMENT; REPORTING.**

   a.  <u>Payment Calculation.</u> You will pay Microsoft the charges due for the adCenter Program based on the number of Clicks delivered by Microsoft multiplied by the cost of the Advertisement, which will be computed in accordance with Microsoft's standard policies, and in United States currency (the "**Click Fees**"). You may authorize a third party to pay Your Click Fees on Your behalf, but You are responsible for any payment obligations arising out of your participation in the adCenter Program. As used in this Agreement, one "**Click**" means an action associated with clicking upon or accessing, in a single instance, to a hypertext link contained in the Advertisement.

   b.  <u>Payment Method Selection; Payment Information.</u> You will select an available payment program when You enroll in the adCenter Program. You will provide to Microsoft any payment information (i.e., credit card, debit or check card number) required for such payment program. You represent and warrant to Microsoft that any payment information that You provide to Microsoft is true and accurate, and You agree that You will promptly update Microsoft with any changes to such payment information. Your use of the adCenter Program constitutes Your reaffirmation that Microsoft is authorized to charge Your payment method for amounts incurred in connection with the adCenter Program. Microsoft may submit such charges for payment utilizing the payment information that You have supplied and You hereby agree to pay any such charges.

   c.  <u>Payment Frequency.</u> You expressly authorize Microsoft to charge Your payment method at least one time per calendar month for Click Fees (if any) in accordance with the applicable payment program. You understand that Microsoft will suspend the display of Your Advertisements (i) for the remainder of any calendar month once an applicable monthly Click Fee budget is reached, or (ii) on the end date You specify in Your adCenter account. For the avoidance of doubt, Microsoft may resume displaying Your Advertisements on the first day of each subsequent calendar month if You do not specify an end date in Your adCenter account.

   d.  <u>Revocation of Payment Method.</u> You may revoke at any time Your authorization for Microsoft to charge your payment method for a Recurring Fixed Payment by pausing the applicable campaign(s) via the adCenter Site. Microsoft will honor such revocation by the end of the second business day after You pause one or more campaigns. You acknowledge that any revocation of such authorization may require the removal of Your Content from the Microsoft Advertising Network. You further acknowledge that (i) You remain responsible for all Click Fees incurred through the end of the second business day following the date on which You revoke Your authorization, and (ii) Microsoft may charge your payment method for any unpaid amounts at the end of the billing period following the date on which you revoke Your authorization.

   e.  <u>Default; Taxes; Billing Disputes.</u> If you are in default of Your obligations, Microsoft may immediately charge Your payment method for any other amounts owing (e.g., amounts owing on other accounts or campaigns), remove Your Content or any part thereof from the Microsoft Advertising Network, and terminate this agreement in addition to any other rights or remedies Microsoft may have. Removal of the Advertisements will not relieve You of Your obligation to pay Click Fees owing to Microsoft for Click Fees that accrue prior to such removal. Click Fees due hereunder do not include taxes or other governmental fees, the computation and payment of which (other than taxes on Microsoft's income) shall be Your responsibility. Microsoft reserves the right to collect taxes or other governmental charges if required to do so by applicable law. You may view reports of Microsoft's calculation of Click Fees online through the adCenter Site, and Microsoft's reports will be the exclusive standard for billing. You understand that third parties may generate impressions or Clicks on Your ads for prohibited or improper purposes, and You accept the risk of any such impressions and Clicks. You must notify Microsoft in writing of any disputed amount within 45 days following the date of an invoice or charge to Your payment method. Following Microsoft's receipt of such written notice, Microsoft will research such inquiry, and will

notify You of a resolution within a reasonable time period. The resolution of such inquiry will be determined by Microsoft in its sole discretion, and Microsoft has no obligation to provide a particular remedy to You. You remain obligated to pay the full invoiced amount if You fail to provide such written notice to Microsoft.

5. **YOUR RESPONSIBILITY FOR ADVERTISEMENTS AND YOUR WEB SITE.**

a. Keyword Responsibility. You are responsible for Your Content, Advertisements (including any associated Keywords that You select) and the content of any Web site linked to by Your Advertisements. Without limiting the generality of the foregoing, You hereby acknowledge that Microsoft is not responsible for the content or maintenance of Your Web site(s), or Web sites owned or operated by any third party (including, without limitation, other advertisers) nor is Microsoft responsible for order entry, fulfillment, payment processing, shipping, cancellations, returns or customer service concerning orders placed on Your Web site(s) or Web sites owned or operated by any third party (including, without limitation, other advertisers).

b. Campaign Content. Microsoft may assist you with your adCenter experience, including suggestions for certain potential keyword selections, advertising copy, budget recommendations or other elements of an advertising campaign (collectively, the "**Campaign Content**"). You may provide Microsoft certain information about Your products or services, keyword selections, anticipated budget and other information reasonably requested by Microsoft to assist you in determining the Campaign Content for advertising through Microsoft AdCenter (collectively, the "**Advertiser-Provided Materials**"). You may authorize Microsoft to access Your adCenter account to place Your Advertisements on Microsoft adCenter on Your behalf. If You authorize Microsoft to place Your Advertisements on Your behalf then You are deemed to have approved all placement of Your Advertisements unless You provide to Microsoft contemporaneous documentary evidence showing that You disapproved such placements. You hereby grant Microsoft a royalty-free, non-exclusive, non-transferable license in perpetuity to use, reproduce and modify the Advertiser-Provided Materials for the purpose of providing such services to You. You are solely responsible for reviewing any suggested Campaign Content and determining its truthfulness, accuracy, completeness, lawfulness and appropriateness. Without limiting the generality of the foregoing, You are solely responsible for determining whether any keywords or advertising text contained in the Campaign Content violate any trademark or other rights of any third party. The decision to use any of the Campaign Content in a campaign within Microsoft AdCenter or on any other media outlet is solely Yours.

c. Representations and Warranties. You represent, covenant and warrant to Microsoft that: (i) the Content is accurate, complete and current, and You are fully authorized to publish the Content, and authorize Microsoft to publish the Advertisements containing the Content throughout the Microsoft Advertising Network; (ii) the Content, and any Web site linked to from Your Advertisements in each case in the Microsoft Advertising Network market or jurisdiction selected by You for display of Your Advertisements (w) complies with all applicable laws and regulations, (x) does not infringe, misappropriate or otherwise violate any third party intellectual property right, (y) does not breach the rights of any person or entity, including, without limitation, rights of publicity or privacy, and is not defamatory, and (z) does not and will not result in consumer fraud (including being false or misleading), product liability, tort, breach of contract, injury, damage or harm of any kind to any person or entity, (iii) in the Microsoft Advertising Network market or jurisdiction selected by You for display of Your Advertisements, the Keywords that you select, when used in connection with Your Advertisements, do not infringe upon or otherwise violate the trademarks or other rights of any third party, (iv) You will not, and will not authorize any third party to, use any automated means, including, without limitation, agents, robots, scripts or spiders, to access Your adCenter Program account, to monitor or copy Microsoft Advertising Network or the content contained therein, or bypass Microsoft's tools or services to interfere or attempt to interfere with the proper working of Microsoft or the Microsoft Advertising Network and will not generate automated or fraudulent impressions or clicks of advertisements on the Microsoft Advertising Network, (v) You are a business, not a consumer, and (vi) You will not take any action that imposes an unreasonably or disproportionately large burden on Microsoft's infrastructure, including Microsoft adCenter, as determined by Microsoft in its discretion.

d. Indemnity. You will indemnify, defend and hold Microsoft and its affiliates, agents and employees harmless from and against any and all loss, liability, and expense (including reasonable attorneys' fees) suffered or incurred by reason of any claims, proceedings or suits based on or arising out of the Content, Your Advertisements, Your Web site, Advertiser Provided Materials, Campaign Content, or any breach by You of any representation or warranty under this agreement. Microsoft will have the right to participate in any defense under this Section 5.3(d) with counsel it selects, and You will not agree to any settlement that imposes any obligation or liability on Microsoft without Microsoft's prior written consent.

6. **DISCLAIMER OF WARRANTIES; LIMITATIONS OF LIABILITY.** YOU EXPRESSLY AGREE THAT YOUR USE OF THE ADCENTER PROGRAM, THE ADCENTER SITE, THE MICROSOFT ADVERTISING NETWORK AND ANY ASSOCIATED PRODUCTS OR SERVICES (INCLUDING THE SUPPLEMENTAL PROGRAMS SET FORTH IN SECTION 5(b) BELOW) IS AT YOUR OWN RISK. EXCEPT AS EXPRESSLY PROVIDED HEREIN, THE ADCENTER PROGRAM, THE ADCENTER SITE, THE MICROSOFT ADVERTISING NETWORK AND ANY ASSOCIATED PRODUCTS OR SERVICES AND ANY MATERIALS OR OTHER SERVICES PROVIDED BY OR ON BEHALF OF MICROSOFT PURSUANT TO THIS AGREEMENT ARE PROVIDED "AS IS" AND WITH ALL DEFECTS, AND MICROSOFT HEREBY DISCLAIMS ALL REPRESENTATIONS, WARRANTIES, AND CONDITIONS, EXPRESS OR IMPLIED, INCLUDING REPRESENTATIONS AS TO THE QUALITY OF THE ADCENTER PROGRAM, THE ADCENTER SITE, THE MICROSOFT ADVERTISING NETWORK OR ANY ASSOCIATED PRODUCTS OR SERVICES, THE EFFECT THE ADVERTISEMENTS MAY HAVE ON ADVERTISER'S BUSINESS AND THE OPERABILITY OF ANY TOOLS USED BY ADVERTISER OR AGENCY TO ACCESS SUCH PARTY'S MICROSOFT ADCENTER ACCOUNT. EXCEPT FOR AMOUNTS OWING PURSUANT TO SECTION 5(c) OR A BREACH OF SECTION 8, NEITHER PARTY WILL BE LIABLE TO THE OTHER PARTY FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR EXEMPLARY DAMAGES (INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PROFITS, BUSINESS INTERRUPTION, LOSS OF OR UNAUTHORIZED ACCESS TO INFORMATION). MICROSOFT WILL HAVE NO LIABILITY HEREUNDER BY REASON OF ANY FAILURE OR DELAY IN THE PERFORMANCE OF ITS OBLIGATIONS DUE TO FORCE MAJEURE, AND WILL NOT BE LIABLE TO ADVERTISER FOR DAMAGES IN EXCESS OF AMOUNTS ACTUALLY PAID TO MICROSOFT HEREUNDER.

7. **TERMINATION.** If You are dissatisfied with any aspect of an adCenter Program(s), Your sole and exclusive remedy is to cease participating in the adCenter Program and terminate this agreement upon written notice to Microsoft. You and/or Microsoft may terminate the agreement and/or Your participation in any adCenter Program, at any time, for any reason or for no reason. Notwithstanding anything contained in the agreement to

the contrary, Microsoft may, in its sole discretion, terminate or suspend Your account, and/or discontinue or suspend Your participation in all or part of any adCenter Program. Reasons for Microsoft's determination to so terminate, suspend or discontinue Your account or participation may include, without limitation, Microsoft's determination that You have violated the agreement or other policies or guidelines of Microsoft applicable to the adCenter Program, Microsoft's belief that Your conduct may be harmful to users or other advertisers, or Microsoft's determination in its discretion that Your conduct is unlawful or likely to create legal liability for Microsoft. All such decisions made by Microsoft will be final and Microsoft shall have no liability regarding such decisions. Upon termination, suspension or discontinuation of any adCenter Program or Your participation therein: (a) all outstanding payment obligations incurred under such adCenter Program will become immediately due and payable; and (b) if You are not managing account termination on-line through Microsoft adCenter, You will be responsible for all Click Fees incurred through the date Microsoft receives Your termination notice plus one (1) business day thereafter. This Section and Sections 1, 4, 5, 6, 8, and 9 shall survive termination, along with any other provisions that might reasonably be deemed to survive such termination.

8. **NOTICES.** Microsoft may give notices to You, at Microsoft's option, by posting on any portion of the adCenter Site, by electronic mail to the e-mail address provided by You to Microsoft or by mail to the postal address provided by You to Microsoft. Such notices are effective 48 hours after such notice is posted or delivered. It is Your responsibility to ensure that Your e-mail address and any other contact information You provide to Microsoft is updated and correct. All notices to Microsoft shall be sent via recognized overnight courier or certified mail, return receipt requested, to the Microsoft adCenter contract notice contacts.

9. **MISCELLANEOUS.** This agreement is governed by Washington law, without regard to its conflicts of law rules. You and agency (if applicable) (a) irrevocably submit to venue and personal jurisdiction in the federal and state courts in King County, Washington for any dispute arising out of or related to this agreement and waive all objections to jurisdiction and venue of such courts, and (b) agree not to commence or prosecute any such dispute other than in such courts. The prevailing party is entitled to recover its costs, including reasonable attorney's fees in any action or suit to enforce any right or remedy under this agreement or to interpret any provision of this agreement. You may not assign or otherwise dispose of this agreement without Microsoft's prior written approval. This agreement binds and inures to the benefit of the parties' successors and lawful assigns. This agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements or communications.

# APPENDIX B

1. **INTRODUCTION.** This is an agreement between you ("**Advertiser**" or "**You**") and Microsoft Corporation (located at One Microsoft Way, Redmond, WA 98052-6399) or the Microsoft affiliate identified in either Microsoft adCenter or Your Microsoft adCenter Insertion Order if such entity is different from Microsoft Corporation ("**Microsoft**"), regarding Your participation in the Microsoft adCenter online keyword advertising program (the "**adCenter Program**"). These terms and conditions, together with any Microsoft adCenter Insertion Order executed (whether in electronic, paper or other format) by You or on Your behalf (each, an "**Insertion Order**") constitute the agreement between You and Microsoft regarding Your participation in the adCenter Program. No other conditions, provisions, or terms of any sort appearing in any writings, payments, or other communications to Microsoft made in connection with such orders will alter or supplement this agreement. You represent and warrant that You are authorized to enter into this agreement and act on behalf of any third party for which You generate Advertisements (as defined below). Microsoft may change this agreement at any time upon notice to You in accordance with the provisions of Section 9. Your continued participation in the adCenter Program or Your use of the Microsoft adCenter after any such notice will signify your acceptance of such change.

2. **MICROSOFT ADCENTER.** Subject to Your compliance with this Agreement, and such other rules and procedures as Microsoft may publish from time to time, You may access the adCenter Program through the adCenter Web site, currently located at http://adcenter.msn.com and certain related Web sites (collectively, the "**adCenter Site**"). Advertiser may access the adCenter Site solely to manage Advertiser's adCenter Program account, including to submit bids for the ability to display advertisements ("**Advertisements**") in response to certain keywords or other matching criteria ("**Keywords**") on the network of advertising channels operated by Microsoft and, upon notice to You, Microsoft's network of participating websites and other distribution outlets (collectively, the "**Microsoft Advertising Network**"). Advertiser will protect any passwords or other credentials associated with Advertiser's account(s), and takes full responsibility for any use of the account(s) under Advertiser's password.

3. **CONTENT; PROGRAM CODE OF CONDUCT.** Advertisements may include, at Microsoft's discretion, text, graphics, a listing title, or a listing description. Advertiser will provide Microsoft with all text, logos, images, and URLs ("**Content**") for the Advertisements, pursuant to the requirements set forth for the adCenter Program at http://adcenter.msn.com including the trademark policies, editorial guidelines and creative limitations posted therein. You hereby grant Microsoft a nonexclusive, royalty-free, worldwide right and license to reproduce, publicly perform, display and distribute, resize or edit the Content solely for the purpose of providing services to You in connection with this agreement. Your failure to meet applicable time requirements or specifications in connection with the delivery of Content may delay or prevent placement of the Content on the Microsoft Advertising Network, or cause its removal from the Microsoft Advertising Network. Microsoft may, in its sole discretion, label any Advertisement as a "sponsored site," "advertisement" or similar designation for clarification purposes.

4. **PAYMENT; REPORTING.**

   a. *Payment Calculation.* You will pay Microsoft the charges due for the adCenter Program based on the number of Clicks delivered by Microsoft multiplied by the cost of the Content, which will be computed in accordance with Microsoft's standard policies, and in the applicable currency stated in Advertiser's IO (the "**Click Fees**"). As used in this Agreement, one "**Click**" means the user action associated with clicking upon or otherwise navigating, in a single instance, to a hypertext link contained in the Content.

   b. *Payment Method Selection; Payment Information.* You will select an available payment program when You enroll in the adCenter Program. You will provide to Microsoft any payment information (i.e., credit card, debit or check card number) required for such payment program. You represent and warrant to Microsoft that any payment information that You provide to Microsoft is true and accurate, and You agree that You will promptly update Microsoft with any changes to such payment information. Your use of the adCenter Program constitutes Your reaffirmation that Microsoft is authorized to charge Your payment method for amounts incurred in connection with the adCenter Program. Microsoft may submit such charges for payment utilizing the payment information that You have supplied and You hereby agree to pay any such charges.

   c. *Payment Methods.* For insertions of Content extending beyond a single monthly billing cycle, you expressly preauthorize Microsoft to charge Your payment method at least monthly on a recurring basis for the amount indicated in either the adCenter Program invoice or Your IO, as applicable. If You elect a fixed Click Fee budget per month (a "**Recurring Fixed Prepayment**"), You understand that Your Content will be removed from the Microsoft Advertising Network for the remainder of the month once such fixed Click Fee budget is reached. If You have not elected a Recurring Fixed Prepayment, You authorize Microsoft to charge Your payment method in a varying amount for all Click Fees incurred on Your behalf (a "**Recurring Variable Net Payment**"). For charges relating to a Recurring Variable Net Payment, Microsoft will provide You at least ten (10) calendar days advance notice of the amount of the charge.

   d. *Revocation of Payment Method.* You may revoke at any time Your preauthorization for a Recurring Fixed Prepayment or a Recurring Variable Net Payment. Such revocation shall be in written form and shall be delivered to Microsoft at _____. Microsoft will honor such revocation by the end of the second business day following Microsoft's receipt of such revocation. You acknowledge that such revocation will require the removal of Your Content from the Microsoft Advertising Network. You further acknowledge that You will remain responsible for all Click Fees incurred through the end of the second business day following the date on which Microsoft receives any such revocation notice.

   e. *Default; Taxes; Billing Disputes.* Microsoft may immediately charge Your payment method for any other amounts owing (e.g., amounts owing on other accounts or campaigns), remove Your Content or any part thereof from the Microsoft Advertising Network, and terminate this agreement, if You are in default of Your payment obligations, in addition to any other rights or remedies Microsoft may have. Removal of the Content will not relieve You of Your obligation to pay Click Fees owing to Microsoft. Click Fees due hereunder do not include taxes or other governmental fees, the computation and payment of which (other than taxes on Microsoft's income) shall be Your responsibility. Microsoft reserves the right to collect taxes or other governmental charges if required to do so by applicable law. You may view reports of Microsoft's calculation of Click Fees online through the adCenter Site, and Microsoft's reports will be the exclusive standard for billing. You must notify Microsoft in writing of any disputed amount within 45 days following the date of an invoice or charge to Your payment method. Following Microsoft's receipt of such written notice, Microsoft will research such inquiry, and will notify You of a resolution within a reasonable time period. The resolution of such inquiry will be

determined by Microsoft in its sole discretion, and Microsoft has no obligation to provide a particular remedy to You. You remain obligated to pay the full invoiced amount if You fail to provide such written notice to Microsoft.

5. **YOUR RESPONSIBILITY FOR ADVERTISEMENTS AND YOUR WEB SITE.**

a. <u>Keyword Responsibility</u>. You are completely responsible for Your Content, Advertisements and the content of any Web site linked to by Your Advertisements, and for Your selection of Keywords. Without limiting the generality of the foregoing, You hereby acknowledge that Microsoft is not responsible for the content or maintenance of Your Web site(s), or Web sites owned or operated by any third party (including, without limitation, other advertisers) nor is Microsoft responsible for order entry, fulfillment, payment processing, shipping, cancellations, returns or customer service concerning orders placed on Your Web site(s) or Web sites owned or operated by any third party (including, without limitation, other advertisers).

b. <u>Representations and Warranties</u>. You represent and warrant to Microsoft that: (a) the Content is accurate, complete and current, and You are fully authorized to publish the Content, and authorize Microsoft to publish the Content and the Advertisements throughout the Microsoft Advertising Network; (b) the Content, and any Web site linked to from Your Advertisements in each case in the Microsoft Advertising Network market or jurisdiction selected by You for display of Your Advertisements: (i) complies with all applicable laws and regulations; (ii) does not infringe, misappropriate or otherwise violate any copyright, patent, trademark, service mark, trade secret or other intellectual property right of any third party; (iii) does not breach the rights of any person or entity, including, without limitation, rights of publicity or privacy, and is not defamatory; and (iv) does not and will not result in consumer fraud (including being false or misleading), product liability, tort, breach of contract, injury, damage or harm of any kind to any person or entity, (c) in the Microsoft Advertising Network market or jurisdiction selected by You for display of Your Advertisements, the Keywords that you select, when used in connection with Your Advertisements, do not infringe upon or otherwise violate the trademarks or other rights of any third party, (d) You will not, and will not authorize any third party to, use any automated means, including, without limitation, agents, robots, scripts or spiders, to access Your adCenter Program account, to monitor or copy Microsoft Advertising Network or the content contained therein, or bypass Microsoft's tools or services to interfere or attempt to interfere with the proper working of Microsoft or the Microsoft Advertising Network and will not generate automated or fraudulent impressions or clicks of advertisements on the Microsoft Advertising Network; and (e) You will not take any action that imposes an unreasonably or disproportionately large burden on Microsoft's infrastructure, including Microsoft adCenter, as determined by Microsoft in its discretion.

c. <u>Indemnity</u>. You will indemnify, defend and hold Microsoft and its affiliates, agents and employees harmless from and against any and all loss, liability, and expense (including reasonable attorneys' fees) suffered or incurred by reason of any claims, proceedings or suits based on or arising out of the Content, Your Advertisements, Your Web site, or any breach by You of any representation or warranty under this agreement. If an agency is entering into this agreement on your behalf, agency agrees to the foregoing representations and indemnity for itself and for You, and also represents and warrants that it is Your authorized agent, and You are not, as of the date of this agreement, in material breach of any agreement with or in default with respect to any amounts owed to the agency. Microsoft will have the right to participate in any defense under this Section 5.3(c) with counsel it selects, and You will not agree to any settlement that imposes any obligation or liability on Microsoft without Microsoft's prior written consent.

6. **DISCLAIMER OF WARRANTIES; LIMITATIONS OF LIABILITY.** YOU EXPRESSLY AGREE THAT YOUR USE OF THE ADCENTER PROGRAM, THE ADCENTER SITE, THE MICROSOFT ADVERTISING NETWORK AND ANY ASSOCIATED PRODUCTS OR SERVICES IS AT YOUR OWN RISK. EXCEPT AS EXPRESSLY PROVIDED HEREIN, THE ADCENTER PROGRAM, THE ADCENTER SITE, THE MICROSOFT ADVERTISING NETWORK AND ANY ASSOCIATED PRODUCTS OR SERVICES AND ANY MATERIALS OR OTHER SERVICES PROVIDED BY OR ON BEHALF OF MICROSOFT PURSUANT TO THIS AGREEMENT ARE PROVIDED "AS IS" AND WITH ALL DEFECTS, AND MICROSOFT HEREBY DISCLAIMS ALL REPRESENTATIONS, WARRANTIES, AND CONDITIONS, EXPRESS OR IMPLIED, INCLUDING REPRESENTATIONS AS TO THE QUALITY OF THE ADCENTER PROGRAM, THE ADCENTER SITE, THE MICROSOFT ADVERTISING NETWORK OR ANY ASSOCIATED PRODUCTS OR SERVICES, THE EFFECT THE ADVERTISEMENTS MAY HAVE ON ADVERTISER'S BUSINESS AND THE OPERABILITY OF ANY TOOLS USED BY ADVERTISER OR AGENCY TO ACCESS SUCH PARTY'S MICROSOFT ADCENTER ACCOUNT. EXCEPT FOR AMOUNTS OWING PURSUANT TO SECTION 5(c) OR A BREACH OF SECTION 8, NEITHER PARTY WILL BE LIABLE TO THE OTHER PARTY FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR EXEMPLARY DAMAGES (INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PROFITS, BUSINESS INTERRUPTION, LOSS OF OR UNAUTHORIZED ACCESS TO INFORMATION). MICROSOFT WILL HAVE NO LIABILITY HEREUNDER BY REASON OF ANY FAILURE OR DELAY IN THE PERFORMANCE OF ITS OBLIGATIONS DUE TO FORCE MAJEURE, AND WILL NOT BE LIABLE TO ADVERTISER FOR DAMAGES IN EXCESS OF AMOUNTS ACTUALLY PAID TO MICROSOFT HEREUNDER.

7. **TERMINATION.** If You are dissatisfied with any aspect of an adCenter Program(s), Your sole and exclusive remedy is to cease participating in the adCenter Program and terminate this agreement upon written notice to Microsoft. You and/or Microsoft may terminate the agreement and/or Your participation in any adCenter Program, at any time, for any reason or for no reason. Notwithstanding anything contained in the agreement to the contrary, Microsoft may, in its sole discretion, terminate or suspend Your account, and/or discontinue or suspend Your participation in all or part of any adCenter Program. Reasons for Microsoft's determination to so terminate, suspend or discontinue Your account or participation may include, without limitation, Microsoft's determination that You have violated the agreement or other policies or guidelines of Microsoft applicable to the adCenter Program, Microsoft's belief that Your conduct may be harmful to users or other advertisers, or Microsoft's determination in its discretion that Your conduct is unlawful or likely to create legal liability for Microsoft. All such decisions made by Microsoft will be final and Microsoft shall have no liability regarding such decisions. Upon termination, suspension or discontinuation of any adCenter Program or Your participation therein: (a) all outstanding payment obligations incurred under such adCenter Program will become immediately due and payable; and (b) if You are not managing account termination on-line through Microsoft adCenter, You will be responsible for all Click Fees incurred through the date Microsoft receives Your termination notice plus one (1) business day thereafter. This Section and Sections 1, 4, 5, 6, 8, 9 and 10 shall survive termination, along with any other provisions that might reasonably be deemed to survive such termination.

8. **CONFIDENTIAL INFORMATION.** If the parties have entered into a Microsoft Non-Disclosure Agreement ("**NDA**"), the parties acknowledge and agree that such NDA applies to this agreement as if fully set forth herein, and that all of the terms of this agreement (including, but not limited to, its existence) and all discussions and negotiations related thereto are considered Confidential Information of Microsoft (as that term is defined in the NDA) under the NDA. If the parties have not entered into an NDA, information that is disclosed by one party to the other party, and that is marked "confidential", or which under the circumstances ought reasonably to be treated as confidential information (including the terms of this agreement), will be treated as confidential by the receiving party. The receiving party will not disclose to a third party such information, or use such information other than for the purposes for which it was provided, without the written consent of the other party; this limitation will apply for a period of one year after disclosure of such confidential information. The foregoing limitations do not apply to the extent such information: (a) is or subsequently becomes publicly available other than through a breach of these limitations; (b) is already known to the receiving party at the time of disclosure; (c) is developed by the receiving party independent of such information; or (d) is rightfully received from a third party without restrictions on disclosure or use.

9. **NOTICES.** Microsoft may give notices to You, at Microsoft's option, by posting on any portion of the adCenter Site, by electronic mail to the e-mail address provided by You to Microsoft or by mail to the postal address provided by You to Microsoft. It is Your responsibility to ensure that Your e-mail address and any other contact information You provide to Microsoft is updated and correct. All notices to Microsoft shall be sent via recognized overnight courier or certified mail, return receipt requested, to the Microsoft adCenter contract notice contacts.

10. **MISCELLANEOUS.** This agreement is governed by Washington law, without regard to its conflicts of law rules. You and agency (if applicable) (a) irrevocably submit to venue and personal jurisdiction in the federal and state courts in King County, Washington for any dispute arising out of or related to this agreement and waive all objections to jurisdiction and venue of such courts, and (b) agree not to commence or prosecute any such dispute other than in such courts. The prevailing party is entitled to recover its costs, including reasonable attorney's fees in any action or suit to enforce any right or remedy under this agreement or to interpret any provision of this agreement. You may not assign or otherwise dispose of this agreement without Microsoft's prior written approval. This agreement binds and inures to the benefit of the parties' successors and lawful assigns. This agreement (and each applicable IO) constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements or communications.